

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable W. J. McConnell, President
North Texas State Teachers College
Denton, Texas

Dear Sir:

> Opinion Number O-4207
> Re: Does the Board of Regents
> of North Texas State Teach-
> ers College have the legal
> authority to authorize the
> expenditure of a portion of
> the income from revenue-
> bearing inflammable proper-
> ties for insurance purposes?

We acknowledge receipt of your opinion request of November 7th, and quote from your letter as follows:

> "The North Texas State Teachers College is maintaining and operating certain revenue-bearing inflammable properties. Does the Board of Regents of the State Teachers College have the legal authority to authorize the expenditure of a portion of the income from these properties for insurance purposes?"

Article 2603c, Vernon's Annotated Civil Statutes, provides, in part, as follows:

> "Sec. 1. * * * and the Board of Regents of the State Teachers College * * * are hereby severally authorized and empowered to construct or acquire through funds or loans to be obtained from the Government of the United States, or any agency or agencies thereof, created under the National Recovery Act, or otherwise created by the Federal Government or from any other source

Honorable W. J. McConnell, page #2

private or public, without cost to the State of Texas, and accept title, subject to such conditions and limitations as may be prescribed by each of said Boards, dormitories, kitchens and dining halls, hospitals, libraries, student activity buildings, gymnasia, athletic buildings and stadia, and such other buildings as may be needed for the good of the institution and the moral welfare and social conduct of the students of such institutions when the total cost, type of construction, capacity of such buildings, as well as the other plans and specifications have been approved by the respective Governing Boards; provided, however, that the Legislature shall never make an appropriation out of the general fund of this State, either in the regular appropriation bill or in a supplemental or emergency appropriation bill, for the purpose of equipping or for the purpose of purchasing and installing any utility connections in any of the buildings erected under and by virtue of the provisions of this Act."

"Sec. 2. * * * That said Boards are further authorized to make any contract with reference to the collection and disposition of the revenues derived from any building so constructed in the acquisition or construction, management, and maintenance of any building or buildings acquired hereunder. In reference to the acquisition of student activity buildings, stadia, gymnasia, and all character of athletic buildings, said Boards are authorized also to make contracts with reference to the collection and disposition of revenues to accrue to such respective institutions from activities, athletic events, and games in which said respective institutions participate away from said institutions, as well as at said institutions; and in anticipation of the collection of such revenues, and for the purpose of paying the cost of the construction or acquisition of said

Honorable W. J. McConnell, page #3

building or buildings and grounds, said Boards
are severally empowered by resolution to author-
ize, sell, and deliver its negotiable bonds or
notes from time to time and in such amount or
amounts as it may consider necessary. The fees
and charges so fixed for the use of any such
building or buildings shall not be collected
after payment in full shall have been completed
for the building or buildings for which said
fees shall be pledged. Thereafter the right
of said respective Boards to fix charges and
fees shall depend on laws other than this Act
as hereby amended. Any bonds or notes issued
hereunder shall bear interest at not to exceed
six (6%) per cent per annum, and shall finally
mature not more than forty years from date."

"Sec. 3. Subject to the above restrictions,
each of said Boards is given complete discretion
in fixing the form, conditions and details of
such bonds or notes. Any bonds or notes issued
hereunder shall not be an indebtedness of the
State of Texas, but shall be payable solely from
the revenues to be derived from the operation of
said buildings; provided that such bonds may be
refinanced by the said Boards whenever such action
is found by the Board to be necessary.

"Provided, however, that the provisions of this
Act shall not apply to any proceedings, levies, or
to any bonds or warrants issued thereunder, the
validity of which has been contested or attached
in suit or litigation which is pending at the time
this Act becomes a law, or which may be filed with-
in thirty (30) days after this Act becomes a law."

* * * * *

"Sec. 9. Provided further that each of said
Boards may make such contracts as may be neces-
sary to properly carry out the provisions of this
Act." (Underscoring ours).

Honorable W. J. McConnell, page #4

Under this article the Legislature has authorized the Board of Regents of North Texas State Teachers College to acquire certain revenue-bearing property and to make any contract with reference to the collection and disposition of the revenues derived from any building so constructed in the acquisition or construction, management and maintenance of any building or buildings acquired thereunder.

Therefore, it is the opinion of this department that the Board of Regents has the authority to enter into a contract with reference to insuring said property and to pledge a portion of the income from revenue-bearing properties for insurance purposes when said property has been acquired under the authority of Article 2603c, Vernon's Annotated Civil Statutes.

If bonds are issued in payment of the construction of buildings authorized under this article, it is our opinion that the Board has the authority to contract in the bond order that a certain portion of the revenues be set aside to pay for the insurance on said buildings. The bond order in such cases usually contains a clause similar to the following:

"Such portion of the gross revenues to be received from the operation of said dormitory as may be required to create and maintain the funds hereinafter provided for shall be set aside monthly into two separate and special funds, which are hereby provided for and created, the first of which funds shall be known as OPERATION AND MAINTENANCE FUND, and the second of which shall be known as BOND FUND. There shall be kept within the BOND FUND a special account hereby provided for and created, known as the RESERVE ACCOUNT. The OPERATION AND MAINTENANCE FUND shall be at all times sufficient to provide for the reasonable cost of maintaining, repairing, operating and insuring said dormitory. The BOND FUND, including the RESERVE ACCOUNT therein, shall be in the amounts and accumulated in the manner provided for * * *"
(Underscoring ours).

However, we call your attention to the fact that this department has repeatedly held that no insurance policy shall be taken out upon any of the public buildings of this State, nor upon the contents thereof, in the absence of a specific appropriation for that purpose. The reason for this holding is stated in our opinions Numbers 0-3000, 0-184 and 0-201, copies of which are enclosed for your information.

Therefore, fire insurance premiums cannot be paid out of the local college funds or any other fund of the college, in the absence of express legislative authority. However, Article 2603c gives to the Board of Regents power to contract to keep buildings erected under the authority of that article insured for the protection of bondholders. Such insurance premiums may be paid only out of the revenues collected from the particular building or buildings covered by the bond issue.

Trusting that this answers your question, we are

APPROVED NOV 15, 1941

FIRST ASSISTANT
ATTORNEY GENERAL

Very truly yours

ATTORNEY GENERAL OF TEXAS

By Claud C. Boothman
Assistant

COB-s
Encls.



APPROVED
OPINION
COMMITTEE
BY ___
CHAIRMAN